UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| RONALD JONES, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:13-CV-220 |
| STEVE VAN DUYN, | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION**

There are two dispositive motions before the Court [doc. 32, 38]. First, Plaintiff and Counter-Defendant filed a Motion to Dismiss the Defendant and Counter-Plaintiff's Second Counterclaim [doc. 32]. The movant, Mr. Jones (hereafter "Jones"), submitted a supporting brief [doc. 33], Mr. Van Duyn (hereafter "Van Duyn") submitted a responsive brief [doc. 41], and Jones submitted a reply [doc. 43].

Jones also filed a Motion for Summary Judgment [doc. 34] and a supporting brief [doc. 35] addressing Van Duyn's first counterclaim. Jones later submitted an Amended Motion for Summary Judgment [doc. 38]. The Amended Motion [doc. 38] incorporates the material of the original motion [doc. 34]. Van Duyn submitted a response [doc. 42] and Jones submitted a reply [doc. 44].

Oral argument is unnecessary, and both motions are ripe for the Court's determination. For the reasons stated herein, the Motions [docs. 32, 38] will be granted.

**I.  RELEVANT FACTS AND BACKGROUND**

The present Action stems from a now-closed civil suit in the Chancery Court for Greene County, Tennessee. To briefly state the facts of that case, Van Duyn alleged that his personal property was damaged while it was being stored on Jones's commercial real property in Greeneville, Tennessee. Jones owned the real property, but he did not rent it directly to Van Duyn. Rather, Jones had a lease agreement with Electronic Innovations (hereafter "EI"), which subleased a portion of the property to Van Duyn for a period of one year beginning in 2007. Van Duyn used the space to store antique auto parts and other equipment that he used for his business. The relationship between Van Duyn and EI eventually soured and Van Duyn filed suit against EI and the realtor who arranged the lease in the Chancery Court.

In his lawsuit, Van Duyn claimed that his equipment had been contaminated by environmental waste on the property. He alleged that EI had breached a duty to disclose to him that the property was known to be contaminated and was the subject of a Brownfields Agreement. He alleged that he would not have rented space there if he had been privy to that information. Van Duyn also claimed that the sublease he entered with EI was invalid because it was for a one year period, while EI only had a month-to-month lease. He later amended his complaint to add Jones as a defendant, alleging that Jones's failure to maintain the property resulted in water damage to his belongings.

The pleadings are facially unclear as to whether Van Duyn intended to make claims for contamination damage against Jones. Pointing this lack of clarity out to the Chancery Court, Jones nevertheless defended against such claims in a motion for summary judgment. Jones argued that (1) he did not have any duty to disclose the Brownfields Agreement and (2) that he was not liable for any alleged contamination damage. On November 2, 2012, the Chancery Court found that Jones did not have a duty to disclose the Brownfields Agreement. The court reserved

the liability issue. On May 24, 2013, the court entered a final order determining that Van Duyn had failed to plead any claim for contamination damage against Jones. The court affirmed the previous order of summary judgment and dismissed Jones from the law suit.

In 2013, Jones filed this Action, alleging malicious prosecution and seeking recovery of the legal fees he incurred defending himself from Van Duyn's claims. Van Duyn counterclaimed, alleging that Jones (1) breached a duty to disclose the contamination on the leased property, and (2) "breached his duty to disclose the fact that Electronic Innovations did not have legal right to lease the property to [Van Duyn] for more than a month." Van Duyn claims that those breaches proximately caused the damage to his personal property. The water damage claims that Van Duyn alleged in the Chancery Court are not at issue in this Action.

## II. JONES'S MOTION TO DISMISS VAN DUYN'S SECOND COUNTERCLAIM

*A. Standard of Review*

Federal Rule of Civil Procedure 8 (a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Detailed factual allegations are not necessary, but the party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] formulaic recitation of the elements of a cause of action will not do," neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]" nor "an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 570).

    B.  Law and Analysis

Jones files this Motion to Dismiss [doc. 32] the second counter-claim under F.R.C.P. Rule 12(b)(6). To summarize the parties' positions, Jones argues that he did not have a duty to notify Van Duyn of the terms of the agreement between Jones and EI. Van Duyn responds that Jones had a duty to disclose because there was privity of estate between the parties. He asserts that an agreement transferring the sublessor's lease for its entire term amounts to an assignment and creates privity with the original lessor. Because EI's lease to Van Duyn exceeded its own rights in the property, privity arose and created a duty for Van Duyn to disclose the terms of the original lease. Jones views his legal status as irrelevant to the issue. He argues that Van Duyn had a duty to discover the lease terms for himself, regardless of whether his agreement with EI resulted in a sublease or an assignment.

"[I]t is clear that the general distinction between an assignment of a lease and a sublease is that the former conveys the whole term, leaving no interest or reversionary interest in the assignor, while the latter grants the subtenant an interest in the leased premises less than the lessee's, or reserves to the lessee a reversionary interest in the term." *First Am. Nat. Bank v. Chicken System of America, Inc.,* 510 S.W.2d 906, 908 (Tenn. 1974). As relevant here, the difference between a sublease and an assignment is that assignees acquire the rights of the original lessee, whereas sublessees do not. *See e.g., Stone v. Martin*, 185 Tenn. 369, 206 S.W.2d 388 (1947). Where a lessee assigns his entire estate, privity of estate is created between the assignee and the original lessor. *Brummitt Tire Co. v. Sinclair Refining Co.,* 75 S.W.2d 1022,

1027 (Tenn. Ct. App. 1934). Since the assignee is in privity of estate with the landlord, he takes all the rights and obligations under the original lease. *Id.*

In this case, the agreement between Van Duyn and EI granted Van Duyn possession of only a portion of the property leased to EI. Therefore, EI maintained an interest in the rest of the property. However, the interest granted to Van Duyn was greater than EI's own interest in that portion of the property, raising the question as to whether the agreement was a true sublease or a partial assignment. Tennessee case law acknowledges the validity of partial assignments. "Tenants may assign part of their interest in leased property to one or more assignees. . . . partial assignment includes the tenant's transfer of its entire interest in a geographical portion of the leased premises for the remaining term of the lease." *Griswold v. Income Properties*, No. 01-A-01-9310-CH-00469 1995 Tenn. App. LEXIS 285 at *13 (Tenn. Ct. App. May 3, 1995). The Court finds that the lease agreement between Van Duyn and EI was a partial assignment under Tennessee law and that it created privity of estate between Van Duyn and Jones as to that portion of the property. Van Duyn therefore acquired the rights of the original lessee as to that portion of the property.

However, the mere fact that Van Duyn acquired EI's rights does not establish that Jones had a duty of information to him. Van Duyn does not point to any language in either the original lease or his own agreement which would require the landlord to explain the terms of the lease to a lessee, nor does he point to any case or law that would create such a duty by privity of estate. Indeed, Tennessee law has historically imposed the burden of information on the second lessee, stating "a subtenant is bound to take notice of the terms of the original lease[.]" *Walgreen Co. v. Walton*, 64 S.W.2d 44, 48 (Tenn. Ct. App. 1932). The Court sees no reason why the same burden would not pass to an assignee who takes subject to the same rights, nor can it find any legal

authority that would impose an additional duty onto the landlord merely because a lease was assigned rather than subleased. Van Duyn may have acquired EI's rights, but it did not acquire greater rights than those EI had to begin with. If Van Duyn was concerned with the terms of the lease between EI and Jones, it was his own responsibility to make efforts to discover those terms. To this matter, he has not claimed that he even attempted to do so.

Van Duyn's conclusory allegation that Jones had a duty to inform him that EI had exceeded its authority does not hold water. Moreover, Van Duyn fails to plead facts that could lead to the reasonable inference that a failure of information as to the terms of the original lease proximately caused his injury. The facts pleaded are clear that the damage to Van Duyn's property was caused by toxic contamination, not invalidity of his lease agreement. In other words, it is plausible that a misrepresentation as to the condition of the property could lead to the alleged property damage in this instance, but it is not plausible that misrepresentation of a document's <u>legal character</u> would do the same. Van Duyn fails to connect the dots between the lease's failure and his ultimate injury.

Based on the foregoing finding that Jones did not have a legal duty to inform Van Duyn of the original lease terms, Van Duyn has failed to state a claim upon which relief can be granted. Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Jones Motion to Dismiss the Defendant-Counter-Plaintiff's Second Counterclaim will be **GRANTED**.

### III. <u>JONES'S MOTION FOR SUMMARY JUDGMENT</u>

A. *Standard of Review*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment is appropriate, courts must view evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).* If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

    B.  *Law and Analysis*

Jones states three grounds that he is entitled to judgment on Van Duyn's first counter-claim [doc. 34]. His first and primary argument is that the doctrine of collateral estoppel bars Van Duyn's counterclaims. Second, he argues that Van Duyn's claims were not timely filed within the three-year statute of limitations period. Third, he argues that the claims should be dismissed on their merits.

*1. Collateral Estoppel*

The doctrine of collateral estoppel operates to preclude issues from relitigation after a determination on the merits. "[W]hen an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation." *Stacks v. Saunders*, 812 S.W.2d 587 (Tenn. Ct. App. 1990). The purpose of collateral estoppel is to protect parties from the burden of litigating multiple lawsuits, to promote judicial economy, and to avoid inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979); *Gerber v. Holcomb*, 219 S.W.3d 914 (Tenn. 2006).

Where federal jurisdiction is based on diversity of citizenship, state law as to the doctrine of collateral estoppel applies. The federal court is required to give a state court judgment the same preclusive effect it would receive under the laws of the state that rendered it. 28 U.S.C. § 1738; *Ingram v. City of Columbus,* 185 F.3d 579, 593 (6th Cir. 1999). In other words, "'[i]f an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court.'" *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank,* 333 F. App'x 994, 998 (6th Cir. 2009) (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1537 (6th Cir.1987)). The current suit arises from Tennessee law, and the judgments that Jones relies on were issued by a Tennessee state court. This Court must therefore determine whether Van Duyn's first counterclaim would be permitted in a Tennessee state court.

Tennessee's interpretation of collateral estoppel is well established. The state supreme court has stated:

> [collateral estoppel] is an extension of the principal of *res judicata,* and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment.

*Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992) (citations omitted). Parties asserting collateral estoppel must show:

> (1) That the issue sought to be precluded is identical to the issue decided in the earlier suit; (2) that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit; (3) that the judgment in the earlier suit has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

*Patton v. Estate of Upchurch*, 242 S.W.3d 781 (Tenn. Ct. App. 2007). Tennessee courts have also stressed that the "the issue must not only have been actually litigated and decided, it must have been necessary to the judgment." *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) (citing *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009); *Dickerson*, 825 S.W.2d at 695)). "Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect." *Id.* (citing Restatement (Second) of Judgments § 27 cmt. (h) (1982)).

Van Duyn's counterclaim alleges "The Plaintiff herein had a duty to disclose the content and level of contamination which existed on the subject property." Jones claims that this is identical to an issue litigated in the state court, whereby the Chancery Court issued an order granting summary judgment on "all claims . . . regarding providing notice of the Brownfield[s]

Agreement." The Chancery Court later affirmed that it had dismissed all of Van Duyn's claims against Jones in its summary judgment decision. Van Duyn claims that collateral estoppel does not apply to his counterclaim because it alleges a failure to disclose the contamination, rather than the existence of the Brownfields Agreement. He argues that the court's later determination that he had not brought a liability claim for contamination shows that the issue was not "actually litigated" in the state court action.

To make light of the allegations contained in the state court pleadings, it is important to clarify that Van Duyn's original complaint did not make allegations against Jones. Van Duyn added Jones by way of an amended complaint, wherein he alleged that Jones had failed to make necessary repairs to the premises, causing water damage to his property. In a second amended complaint, Van Duyn alleged that EI had breached a duty to disclose that the property was known to be contaminated and that it was under a Brownfields Agreement. He did not make the same allegations as to Jones. However, review of the summary judgment brief submitted to the Chancery Court shows that Jones's duty to disclose the toxic contamination was undoubtedly raised. Jones argued that (1) state law and federal regulations prescribed the required public disclosures and (2) Van Duyn had not shown that his injuries resulted from any contamination. Van Duyn submitted a responsive brief that did not rebut Jones's arguments.

The Chancery Court treated the motion as a motion for partial summary judgment on all claims "other than the alleged contamination of the plaintiff's property by substances monitored by the Brownfield[s] Agreement." Implicitly noting that it did not consider the section of Jones's brief that addressed the issue of liability for the contamination itself, the Chancery Court dismissed Van Duyn's claims "regarding providing notice of the Brownfield[s] Agreement" but reserved the issue of contamination. A subsequent order dismissed all of Van Duyn's claims

against EI. Regrettably, the parties have not submitted any documentation of the court's grounds for that order in connection with this Motion so it is impossible for this Court to determine the court's reasoning. After further proceedings, the Chancery Court concluded that Van Duyn had not pleaded any contamination liability claims against Jones and that the partial summary judgment order had disposed of the claims that he had pleaded. Jones now argues that the claims disposed of below and those alleged in this Action are identical. Van Duyn, on the other hand, urges a distinction between a duty to provide notice of the Brownfields Agreement and a duty to provide notice of the contamination itself.

Collateral estoppel is not so narrow as to apply only to issues expressly noted in the judgment itself, but it is not so broad as to cover every issue related to the judgment. Pursuant to Tennessee law, "[o]nce an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, <u>even when the claims or causes of action are different</u>." *State v. Scarbrough*, 181 S.W.3d 650, 654 (Tenn. 2005) (quoting *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001) (emphasis added). The relevant inquiry is "what point or question was actually litigated and determined in the original action, not what might have been litigated and determined." *Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992) (citing *Cline v. Cline*, 270 S.W.2d 581, 584 (Tenn. Ct. App. 1987). In describing the application of the "actually litigated" inquiry, the Tennessee Supreme Court stated:

> the court must first identify the legal or factual issues that were decided in the earlier proceeding. Then the court must identify the issue or issues sought to be precluded in the later proceeding. Finally the court must determine whether the issue or issues sought to be precluded in the later proceeding are the same as the issue or issues that were decided in the earlier proceeding. For the doctrine of collateral estoppel to apply, the issue or issues sought to be

> precluded must be identical, not merely similar at the issue or issues decided in the earlier proceeding.

*Mullins v. State*, 294 S.W.3d 529, 536 (Tenn. 2009) (citing *Patton*, 242 S.W.3d at 787). In the present Action, the Court must determine whether Jones's alleged duty to disclose the contamination was addressed and decided in the Chancery Court[1]. Jones has not shown that the issues decided by the Chancery Court are identical to those he now seeks to preclude. Chiefly, the Court disagrees with Jones's argument that the distinction between a duty to disclose the existence of a Brownfields Agreement and breaching a duty to disclose the contamination itself is a meaningless one. It is clear to this Court that the Chancery Court treated the two issues separately and that Van Duyn's duty to disclose the existence of the Brownfields Agreement was actually litigated and decided on its merits.

We cannot so easily make the same assertion as to Van Duyn's duty to disclose the contamination itself. The Chancery Court's summary judgment order dismissed only claims "regarding notice of the Brownfield[s] Agreement," not all claims regarding notice of the contamination. Nothing in the record submitted indicates that the court ever considered whether Jones had an independent duty to disclose the property's condition. Instead, the court determined that Van Duyn had not pleaded a claim of contamination liability against Jones at all[2]. This

---

[1] It is important to note that collateral estoppel is narrower than the related doctrine of res judicata, also referred to as claim preclusion and the doctrine of merger and bar, which precludes claims that <u>could have been</u> litigated in a prior suit. *See Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979); Restatement (Second) of Judgments §§ 24-25. Because Jones advances only collateral estoppel as grounds for dismissal, this opinion does not consider whether the contamination disclosure issue could have been litigated in Chancery Court, only whether it was, in fact, litigated. The Court therefore declines to rule on whether the Chancery Court suit would preclude the present claims under a theory of res judicata.

[2] The Court is not blind to the related issue of whether collateral estoppel bars a party who loses a claim against one defendant from bringing the same claim against a co-defendant in a subsequent action. In other words, does collateral estoppel preclude the plaintiff from second bite at the apple against a different defendant? The Chancery Court's final order granted EI's motion for summary judgment as to Van Duyn's claims against it. These claims appear to be closer to the claims that Van Duyn has brought against Jones in this Action and may have been actually litigated and decided on their merits. However, Jones has not argued their preclusive effect and there is no indication of the court's grounds for dismissal. Because there is insufficient information, the Court declines to rule on whether

Court does not believe that an issue raised and then dismissed as having not been pleaded is considered an issue "actually litigated and decided on its merits" for the purposes of collateral estoppel.

It is important to distinguish the difference between the procedural situation here and a dismissal for failure to state a claim, which is preclusive of subsequent claims. *Dyer v. Intera Corp.*, 870 F.2d 1063 (6th Cir. 1989). To illustrate, in *Dyer*, an employee alleged breach of contract and promissory fraud against his employer. The court dismissed the claims under Tennessee Rule of Civil Procedure Rule 12.02(6), finding that the plaintiff had failed to state a claim for breach of contract because (1) his employment contract was terminable at-will and (2) the doctrine of promissory fraud was not recognized under Tennessee law. The plaintiff then filed a federal action alleging the same claims, and the Sixth Circuit held that the state court's judgment for failure to state a claim was adjudication on the merits. *Id.* at 1066. This is not the case before the Court today. Here, Van Duyn's pleadings claimed only that Jones was liable for water damage to his property, not waste contamination damage. His claims of contamination, for whatever reason, were directed solely at EI and the real estate agent. In other words, the Chancery Court did not order that Van Duyn's claims were insufficient for some reason of law or fact, but that they never existed in the first place. To the extent that Jones's motions and briefs requested dismissal of the contamination claims, the court's final order effectively denied the requests as unnecessary. Taken together, the submitted chancery documents support this construction: Van Duyn raised the issue of contamination liability in his summary judgment brief, but the court's partial summary judgment order indicates that it did not consider the argument. The final order indicates that the summary judgment order had disposed of all claims

---

the Chancery Court judgment dismissing the claims against co-defendant EI operates to preclude the present claims against Jones.

pleaded and does not show that the court gave any additional consideration to Jones's argument. Because the parties have not submitted any transcript or further documentation, the Court must presume that the final dismissal was not grounded in substantive grounds and was thus not "actually litigated" for the purpose of collateral estoppel.

While the state court case involved the same parties and subject matter, Jones has not shown that the issue of a duty to disclose the contamination was identical, rather than merely related, to any issue actually litigated and decided on its merits in the prior suit. Moreover, even if the Chancery Court had decided this very issue, it would not be preclusive because it was unnecessary to the court's ultimate determination that Van Duyn did not make any claims against Jones for alleged contamination damage. The two state court judgments do not preclude Van Duyn's claim that Jones is liable for property damage caused by the contamination on the property.

   *2. Statute of Limitations*

Jones next argues that Van Duyn's first counterclaim was not timely filed. Van Duyn's claim for property damage is subject to a three-year limitations period under Tenn. Code Ann. § 28-3-105. There is no dispute that Van Duyn began leasing space on the premises in 2007. It is not clear exactly when the alleged property damage occurred, but he claimed damage from the contamination in his second amended complaint, filed in the Chancery Court on September 23, 2010. The counterclaims in this Action were brought on November 18, 2013, more than three years after Van Duyn filed his second amended complaint.

Van Duyn argues that Tennessee's "discovery rule" tolled the statute of limitations. Under the discovery rule, the statute of limitations begins to run when the claimant discovers, or in the exercise of reasonable care and diligence, should have discovered his injury. *Leach v.*

*Taylor*, 124 S.W.3d 87 (Tenn. 2004). He is correct in stating that, where there is a question as to when the plaintiff should have discovered his injury, the reasonableness of a claimant's ignorance is typically a question for the jury. *Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998). However, the discovery rule cannot apply to save Van Duyn under these facts because there can be no doubt that he was aware of his injuries when he sued EI to recover for them. Van Duyn's claim that he did not know the full extent of his damages until he tested the property in April 2013 is irrelevant. The critical time to trigger the limitations period is when a claimant has "knowledge of facts sufficient to put [him] on notice that he has suffered an injury[.]" *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995). It is not necessary that a claimant understand the full extent of his injuries. *Wyatt v. ACandS, Inc.*, 910 S.W.2d 851, 855 (Tenn. 1995) (stating "a plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known.") (citations omitted). Because the undisputed facts can only permit a reasonable person to conclude that Van Duyn had notice of his alleged injury more than three years before he filed claims in this Action, summary judgment is appropriate. The Court therefore finds that there is no issue of material fact remaining and that Jones is entitled to judgment as a matter of law on Van Duyn's first counterclaim.

Because Van Duyn's first counterclaim was not timely filed, the Court does not find it necessary to determine whether it is sufficient to survive summary judgment on its merits. The Court therefore declines to address Jones's third argument.

## IV.     CONCLUSION

Based on the foregoing, the Plaintiff and Counter-Defendant's Motion to Dismiss the Defendant and Counter-Plaintiff's Second Counterclaim [doc. 32] and the Plaintiff and Counter-

Defendant's Amended Motion for Summary Judgment on the Defendant and Counter-Plaintiff's First Counterclaim [doc. 38] will be **GRANTED**.

                ENTER:

                s/ Leon Jordan
                United States District Judge